UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JESSE FRANK SHEPPARD                                   CIVIL ACTION

VERSUS                                                         NO. 16-2401

LIBERTY MUTUAL INSURANCE                      SECTION "R" (3)
COMPANY, ET AL.


## ORDER AND REASONS

Jesse Frank Sheppard alleges that he suffers from lung cancer caused by asbestos exposure.  He brings claims against his former employer, several manufacturers and distributors of asbestos-containing products, and related insurers. The parties have filed several motions, and the Court resolves seven of them as follows.


## I.      BACKGROUND

This suit was originally filed in the Civil District Court for the Parish of Orleans.[1]  Defendant Mosaic Global Holdings Inc. removed the action to this Court on March 22, 2016.[2]  In his complaint, Sheppard alleges that he was exposed to asbestos "[o]n a daily basis" as an employee of Mosaic's

---

[1]      R. Doc. 1 at 1.
[2]      *Id.*

predecessor company, Freeport Sulphur Company.[3]  This exposure allegedly caused Sheppard to develop asbestos-related cancer, lung cancer, and/or mesothelioma.[4]  Although Sheppard stopped working for Freeport in the early- to mid-1990s,[5] Sheppard's asbestos-related ailments were first diagnosed in October 2015.[6]

In addition to Freeport/Mosaic, Sheppard sues several defendants involved in the manufacture, distribution, and sale of asbestos-containing products that Sheppard allegedly encountered in the course of his work.[7] Sheppard also brings claims against insurance companies that allegedly provided coverage to defendants for asbestos-related claims and withheld information from Sheppard about the danger of asbestos.[8]

Sheppard brings claims for "negligence, intentional tort, fraud, and strict liability," and alleges that all defendants are "jointly, severally, and *in*

---

[3]    R. Doc. 1-1 at 5.

[4]    *Id.* at 6.

[5]    Sheppard's complaint is inconsistent on this point. Sheppard alleges variously that his tenure at Freeport, and exposure to asbestos, ran from "approximately 1967 through 1992," from "approximately 1967 through 1994," and "from 1967 through 1976."  R. Doc. 1-1 at 5, 6.

[6]    R. Doc. 1-1 at 6.

[7]    *Id.* at 6, 7.

[8]    *Id.* at 3, 4, 8.

*solidio* liable."[9]   He seeks damages for, among other things, physical and mental pain, loss of life, loss of income, and medical expenses.[10]

## II.   DISCUSSION

### A. Motion to Strike Gayla McCluskey (R. Doc. 187)

Sheppard moves to strike Gayla McCluskey on the grounds that defendant Reilly Power never offered McCluskey for deposition.   In response, Reilly Power points to an email sent by its counsel to Sheppard's counsel on December 27, 2016.   In the email, "Riley Power, Inc. offers Gayla McCluskey for deposition by telephone at 1:00 pm EST on January 3, 2017."[11]   This date is before the close of discovery,[12] and plaintiffs have offered no further briefing to suggest this dispute remains live.   Accordingly, the motion is DENIED AS MOOT.

---

[9]     *Id.* at 29.
[10]    *Id.*
[11]    R. Doc. 223-1 at 3.
[12]    R. Doc. 150.

### B. Motion to Exclude Evidence Regarding Settlements (R. Doc. 198) and Motion to Exclude Evidence Regarding Collateral Sources (R. Doc. 199)

In these two motions, Sheppard argues that evidence that he settled claims with other defendants in this case is inadmissible under Federal Rule of Evidence 408 and that evidence of collateral sources of compensation, such as insurance benefits, is inadmissible under the collateral source rule. Under Rule 408, evidence of compromise of a claim is inadmissible for purposes of establishing liability. Fed. R. Evid. 408. Similarly, "the collateral source rule operates to exclude evidence of collateral benefits because it may unfairly prejudice the jury." *Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc.*, 332 F.3d 779, 794 n.7 (5th Cir. 2003).

Defendants respond that both settlement agreements and evidence of collateral sources may be admissible to show bias or prejudice in a witness, to explain why the plaintiff's testimony regarding settling defendants has changed, or for other limited purposes. Defendants are correct that Rule 408 is not a blanket ban on settlement evidence. *See* Fed. R. Evid. 408(b); 2 McCormick On Evid. § 266 (7th ed. 2016). However, "[i]n evaluating the 'another purpose' exception to Rule 408, the district court must balance the exception against the policy of encouraging settlements, and take care that an 'indiscriminate and mechanistic' application of the exception does not

4

undermine the rule's public policy objective." *Marine Power Holding, L.L.C. v. Malibu Boats, LLC*, No. 14-912, 2016 WL 4218217, at *4 (E.D. La. Aug. 8, 2016) (quoting *Gulf S. Mach., Inc. v. Am. Standard, Inc.*, No. 97-065, 1999 WL 102752, at *2 (E.D. La. Feb. 22, 1999)). A similar balancing standard applies to the collateral source rule. *Trico Marine*, 332 F.3d at 794 n.7. ("[I]n certain circumstances, [collateral source] evidence could be admitted for a limited purpose if there is little risk of prejudice and the court gives the jury a limiting instruction.").

The parties have argued these motions in generalities rather than specifics. Neither party identifies which specific settlements should be excluded or admitted. Sheppard does not outline why evidence of settlements with any party would be prejudicial. Defendants, meanwhile, list reasons why a settlement *might* be admissible, but offer no argument tailored to the facts of this case. The parties' briefing regarding collateral sources is similarly academic.

Accordingly, the Court finds that a blanket ban on these categories of evidence is unwarranted, and Sheppard's motions are DENIED. However, in view of the potential prejudice associated with evidence of prior settlements or collateral sources of compensation, no such evidence will be admissible at trial without express permission of the Court. Parties seeking to introduce

evidence relating to settlements or collateral sources shall provide written briefing on the issue, no later than midnight on the day before the proposed offer.

### C. Motion in *Limine* Regarding Experts That Have Not Yet Been Deposed (R. Doc. 201)

Sheppard represents that he was unable to depose all of defendants' experts before the Court's deadline for Motions in *limine* regarding the admissibility of expert testimony.   He has accordingly filed the instant motion "in order to preserve the plaintiff's ability to supplement this motion if, following the deposition of the remaining expert witnesses, it appears that a motion in *limine* regarding the admissibility of the experts' testimony is warranted."[13] This is not a proper use of a motion in *limine*, and the motion is therefore DENIED.

### D. Motion for Judicial Admission Regarding Asbestosis (R. Doc. 211)

In this motion, Sheppard argues that in moving for summary judgment on Sheppard's purported claims for asbestosis, defendants made a judicial

---

[13]    R. Doc. 201-1 at 2.

admission that Sheppard in fact has asbestosis.  Defendants deny making any such admission.

The Fifth Circuit defines a judicial admission as "a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).  A judicial admission is conclusive and withdraws a fact from contention.  *See id.*  Further, a statement by counsel during the course of trial may qualify as a judicial admission if counsel intended to release the opponent from proof of a fact.  *See id.* An ordinary evidentiary admission, on the other hand, is "'merely a statement of assertion or concession made for some independent purpose,' and it may be controverted or explained by the party who made it." *Id.* (quoting *McNamara v. Miller*, 269 F.2d 511, 515 (D.C. Cir. 1959)).

Defendants' motion concerning asbestosis plainly does not meet the standard for judicial admissions.  In their motion for summary judgment, Defendants argue that any claim for asbestosis is prescribed because Sheppard *alleges* he was *diagnosed* with asbestosis in 2011.[14]  Defendants make clear that they dispute the validity of this diagnosis.  This is far from

---

[14]     R. Doc. 208-1.

7

the "formal concession" required to constitute a judicial admission. Accordingly, the motion is DENIED.

### E. Motion for Partial Summary Judgment Regarding Asbestosis Claims (R. Doc. 208)

Defendants move for summary judgment on any claims Sheppard brings for asbestosis.[15]  Sheppard denies that he has brought such a claim.[16] To the extent the complaint is ambiguous on this point, the Court defers to Sheppard's more limited interpretation of his own complaint. *See Gen. Chemicals, Inc. v. Exxon Chemical Co., USA*, 625 F.2d 1231, 1234 (5th Cir. 1980) (considering plaintiff's briefing in interpreting complaint that was "not a model of clarity"); *see also Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1040 (9th Cir. 2003) (deferring to plaintiff's more limited interpretation of the claims brought in its ambiguous complaint).  Therefore, because Sheppard's complaint brings no claim for asbestosis, defendants' motion is DENIED AS MOOT.

---

[15]  *Id.*
[16]  R. Doc. 247.

### F. Motion in *Limine* to Exclude Alleged Consultation Note (R. Doc. 186)

Sheppard moves to exclude a "consultation note" allegedly completed by a Dr. Smith.  According to the note, dated November 7, 1989, Sheppard had at that time "been a smoker for about 25 years with a 20 to 25 pack a year history."[17]  The parties dispute whether the note indicates that Sheppard had a 20-25 "pack year" history—meaning Sheppard smoked roughly a pack of cigarettes a day for 20 to 25 years—or that Sheppard smoked roughly two packs per *month* over 20 to 25 years.  In other words, defendants argue that a "pack year" is common medical term for measuring a smoking habit, that the "a" in "pack a year history" is a typo, and that Dr. Smith meant to say that Sheppard had a 20-25 pack year history. Sheppard, meanwhile, maintains that Dr. Smith is saying that Sheppard smoked 20-25 packs *per year* for about 25 years.

In support of his motion for exclusion, Sheppard argues that the consultation note is hearsay, cannot be properly authenticated, and will cause confusion and prejudice. The Court considers these purported grounds for exclusion in turn. To counter Sheppard's arguments regarding hearsay and authenticity, defendants assert that the Dr. Smith record falls under the

---

[17]    R. Doc. 186-4.

business records exception to the hearsay rule and is self-authenticating pursuant Federal Rule of Evidence 902(11).  *See* Fed. R. Evid. 803(6); Fed. R. Evid. 902(11).

"The issue of admissibility under 803(6) is chiefly a matter of trustworthiness." *Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1319 (5th Cir. 1981).  The rule imposes "no requirement that the records be created by the business having custody of them." *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990). Nonetheless, the assumption of trustworthiness underpinning 803(6) "collapses when 'any person in the process is not acting in the regular course of the business.'" *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 279 (5th Cir. 1991) (quoting McCormick on Evidence § 306 at 872 (3rd ed. 1984)).

In support of their positions, the parties present dueling affidavits from Jimmie S. Coney, the custodian of records for the offices of William C. Coney, MD.[18] In the affidavit offered by defendants, Coney states that: (1) the Dr. Smith record is drawn from "a true, accurate and complete copy of the medical records of Jesse Frank Sheppard maintained by" the offices William C. Coney, MD[19]; (2) these medical records "were made at or near the time of

---

[18]    R. Doc. 186-8; R. Doc. 225-3.
[19]    R. Doc. 225-3 at 1.

the occurrence of the matter set forth by, or from information transmitted by, people with knowledge of those matter"[20]; and (3) the records "were kept in the course of regularly conducted business activity and it was the regular practice of the business to make the records."[21] These declarations satisfy Rules 803(6)(A)-(C) and 902(11), and would therefore usually provide a proper foundation for admission.

Sheppard, however, presents a second affidavit in which Coney specifically addresses the Dr. Smith record. In this later affidavit, Coney states that (1) the Dr. Smith record "is not created in the course and scope of this office" and Coney "cannot attest to the authenticity accuracy, or veracity of said document or any statements contained therein" (2) the record was not "prepared by anyone in the offices" of William C. Coney, MD, but rather was "made by an individual(s) from another medical facility"; and (3) the business practices of this other medical facility are "not known to" Coney.[22]

The combined effect of these affidavits is that Coney knows how the Dr. Smith record was kept by his office—*i.e.* in a way that satisfies the business records exception—and that the record was prepared by another medical facility, but Comey does not know how that facility produced the record. The

---

[20]   *Id.* at 2.
[21]   *Id.*
[22]   R. Doc. 186-8.

Fifth Circuit faced very similar facts in *United States v. Duncan*, 919 F.2d 981 (5th Cir. 1990). In *Duncan*, the court considered insurance company records, which had been authenticated by a representative of the insurance company. *Id.* at 986. The insurance file contained medical records produced by hospitals unaffiliated with the insurance company. *Id.* The *Duncan* defendants argued that because "the insurance company records contained other unauthenticated medical records and statements by doctors," the business records exception did not apply and the records could not be sufficiently authenticated. *Id.*

The Fifth Circuit squarely rejected this argument. In doing so, the court found that "[t]he insurance companies compiled their records from the business records of hospitals," and "[b]ecause the medical records from which the insurance company records were made were themselves business records, there was no accumulation of inadmissible hearsay." *Id.* The court mentioned no need for testimony regarding the practices of the hospitals which produced the records, and the opinion's discussion of the relevant testimony suggests that none was offered. *Id.* at 986 n. 4.

The Court finds that *Duncan* provides sufficient authority to reject Sheppard's hearsay and authenticity arguments. The Court further notes that Sheppard's statement regarding his smoking history, which is

12

incorporated into the Dr. Smith record, is an opposing party's statement and therefore is not hearsay under Rule 801(d)(2).  Even if Sheppard's statement were hearsay, it would fall under the hearsay exception for statements made for medical diagnosis or treatment. *See* Fed. R. Evid. 803(4).

Furthermore, as to authenticity, the Fifth Circuit "does not require conclusive proof of authenticity before allowing the admission of disputed evidence." *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (citing *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993)).  Rather, Rule 901 "merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be."  Accordingly, "[a] proponent may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." *Id.* (internal quotations omitted). Here, the characteristics and discovery of the Dr. Smith record strongly support its authenticity.  The document was produced as part of a 290 page medical record and the parties appear to agree as to the authenticity of the other 289 pages.  Furthermore, the document's appearance is consistent with the countless medical records the Court has reviewed in the past. Accordingly, the Court finds that defendants have presented sufficient

evidence to support a finding that the Dr. Smith record "is what its proponent claims it to be." *Id.*

Finally, Sheppard's argument that the Dr. Smith record will lead to confusion in unpersuasive. Evidence may sometimes be excluded if it is likely to confuse the jury. *See, e.g.*, *Day v. Rogers*, 260 F. App'x 692, 693 (5th Cir. 2007). But Sheppard provides no support that for the notion that evidence subject to two competing interpretations should be excluded for that reason alone.  Furthermore, the Dr. Smith report speaks directly to a key issue in this case—Sheppard's smoking history—and its probative value therefore outweighs any risk of confusion.

For these reasons, Sheppard's motion in *limine* to exclude the Dr. Smith report is DENIED.


### III.   CONCLUSION

For the foregoing reasons:

- Sheppard's Motion to Strike Gayla McClusky (R. Doc. 187) is DENIED AS MOOT.

- Sheppard's Motion to Exclude Evidence Regarding Settlements (R. Doc. 198) is DENIED. Parties seeking to introduce evidence

relating to settlements shall provide written briefing on the issue, no later than midnight on the day before the proposed offer.

- Sheppard's Motion to Exclude Evidence Regarding Collateral Sources (R. Doc. 199) is DENIED.  Parties seeking to introduce evidence relating to collateral sources shall provide written briefing on the issue, no later than midnight on the day before the proposed offer.

- Sheppard's Motion in *Limine* Regarding Experts That Have Not Yet Been Deposed (R. Doc. 201) is DENIED.

- Sheppard's Motion for Judicial Admission Regarding Asbestosis (R. Doc. 211) is DENIED.

- Defendants' Motion for Partial Summary Judgment Regarding Asbestosis Claims (R. Doc. 208) is DENIED AS MOOT.

- Sheppard's Motion in *Limine* to Exclude Alleged Consultation Note (R. Doc. 186) is DENIED.

New Orleans, Louisiana, this __2nd__ day of February, 2017.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

15